492 So.2d 1179 (1986)
STATE of Florida, Appellant,
v.
David TAL-MASON, Appellee.
No. 85-1754.
District Court of Appeal of Florida, Fourth District.
August 20, 1986.
Rehearing Denied September 18, 1986.
Jim Smith, Atty. Gen., Tallahassee and Georgina Jimenez-Orosa, Asst. Atty. Gen., West Palm Beach, for appellant.
Richard A. Belz, Supervising Atty., and Jeffrey M. Leukel, Certified Legal Intern of Florida Institutional Legal Services, Inc., Gainesville, for appellee.
PER CURIAM.
The lower court ruled that appellee was entitled to receive credit towards his sentence for time spent in custody of the Department of Health and Rehabilitative Services while adjudicated incompetent to stand trial. In so doing, the court found the jail-time credit statute, Section 921.161(1), Florida Statutes (1983) to violate the equal protection and due process clauses of the state and federal constitutions. The supreme court has previously ruled on the constitutionality of section 921.161 and its non-applicability to pre-sentence confinement in state hospitals and rehabilitation centers. Pennington v. State, 398 So.2d 815 (Fla. 1981). We cannot agree with the trial judge that Pennington is inapplicable to the facts of this case. Accordingly, the judgment of the trial court is reversed.
*1180 WALDEN, J., and COWART, EDWARD D., Associate Judge, concur.
ANSTEAD J., concurs specially with opinion.
ANSTEAD, Judge, specially concurring.
The issue presented by this case is whether Section 921.161(1), Florida Statutes (1983) requires that a defendant convicted of a crime receive credit toward his or her jail sentence for time spent in a state mental hospital while adjudicated incompetent to stand trial. If not, we must determine whether such credit is required by the United States and Florida Constitutions. I concur with the majority that the supreme court's opinion in Pennington v. State, 398 So.2d 815 (Fla. 1981) answers both questions in the state's favor and requires reversal. However, I find the appellee's arguments to be forceful, and I write separately to emphasize the approach permitting credit taken by other jurisdictions to this important question.
David Tal-Mason was arrested on June 30, 1977 and charged with one count of first degree murder and two counts of grand theft. Pursuant to Section 925.10, Florida Statutes (1977), the trial court ordered him committed to the Department of Health and Rehabilitative Services for an evaluation of his competency to stand trial. Tal-Mason was transferred to South Florida State Hospital in Hollywood, and in January 1978, was adjudicated mentally incompetent to stand trial. He was returned to court on three subsequent occasions in 1979 and 1981, and each time was found incompetent to stand trial. In April, 1982, he was transferred to the North Florida Evaluation and Treatment Center in Gainesville.
On March 29, 1983, Tal-Mason was found competent to stand trial, and on August 8, entered a plea of guilty to second degree murder and was sentenced to life imprisonment. On January 25, 1985, he filed a motion pursuant to Florida Rule of Criminal Procedure 3.850 seeking credit against his sentence for time spent in custody before trial. Specifically, he alleged that he spent a total of five years and twenty-seven days in the custody of the DHRS before trial for which he was not given credit on his sentence. He also alleged that he had spent one year and thirteen days in county jail awaiting trial but received credit for only one year. The trial court initially granted his request for an additional thirteen days' credit for time spent in county jail but denied credit for time spent in the two state mental hospitals. Tal-Mason filed a motion for rehearing, and on July 22, 1985, the court issued a detailed order reversing its earlier position and granting Tal-Mason credit for time spent undergoing treatment in state hospitals. The court also found Section 921.161(1), Florida Statutes (1983), which by its terms limits credit for pre-sentence confinement to time spent in county jails, to violate the constitutional guarantees of due process and equal protection of the law. The state now appeals the trial court's ruling.
At the time Tal-Mason was sentenced, section 921.161(1) provided:
A sentence of imprisonment shall not begin to run before the date it is imposed, but the court imposing a sentence shall allow a defendant credit for all of the time he spent in the county jail before sentence. The credit must be for a specified period of time and shall be provided for in the sentence.
In Dalton v. State, 362 So.2d 457 (Fla. 4th DCA 1978), this court affirmed a trial court ruling which denied the appellant credit for time spent in a state mental hospital while being evaluated for competency to stand trial. In Dalton, we did not cite the county jail limitation set out in section 921.161 as controlling the disposition of a request for credit for time spent in a mental hospital as opposed to a jail. Instead, we relied heavily on certain language from the supreme court's opinion in Dorfman v. State, 351 So.2d 954 (Fla. 1977), drawing a distinction between "confinement in a prison ... as part of a criminal sentence, and a period of treatment in a mental hospital for the purpose of helping the individual to return to society." 351 So.2d at 957, quoted in Dalton, *1181 362 So.2d at 458. For a number of reasons, I would no longer support our holding in Dalton. First, the Dorfman case, which we viewed to be "controlling" in Dalton, 362 So.2d at 458, has been superseded by subsequent law. Dorfman upheld the denial of credit for a period during which the appellant was committed as a mentally disordered sex offender under Chapter 917, Florida Statutes (1971). 351 So.2d at 957. A subsequently enacted provision of the Mentally Disordered Sex Offender Act, section 917.014, would require credit to be given under the facts of that case. Further, I no longer see a clear analogy between the facts of Dorfman and a situation in which a defendant is committed while being evaluated for competency to stand trial. The court in Dorfman emphasized the fact that the committal order in that case was civil in nature, and was imposed with the objective of allowing the defendant to return to society. 351 So.2d at 957. In contrast, the order of commitment in a case like Dalton or this one serves the sole, limited objective of enabling the defendant to assist his counsel in preparing his defense at trial. See Fla.R. Crim.P. 3.211. The procedure in no way contemplates restoring the defendant to a state of good overall mental health or releasing him from control of the criminal justice system. In fact, the procedure is analogous to a county jail inmate's temporary hospitalization for an injury or illness, which may delay his trial, but which would surely be credited towards his sentence upon conviction.
Finally, Dalton did not reach the constitutional questions raised by the failure of the statute to provide credit for certain kinds of pretrial custody. These questions were addressed for the first time on different facts by the supreme court in Pennington v. State. In Pennington, the petitioner was required as a condition of probation to spend time in a drug rehabilitation center. The petitioner's probation was later revoked and the trial court, when imposing sentence, declined to give credit for 363 days spent in the rehabilitation center. This court affirmed the denial of credit, and the supreme court approved that decision. 398 So.2d at 816-817. In Pennington, the supreme court foreclosed each claim for relief urged by the appellee in this case. Citing precedent from the Eighth and Ninth Circuits, the court broadly rejected the argument that to allow credit for jail time but not for time spent in a rehabilitative center or state hospital constitutes a denial of equal protection:
Halfway houses, rehabilitation centers, and state hospitals are not jails. Their purpose is structured rehabilitation and treatment, not incarceration.
398 So.2d at 817. From this premise, the court reasoned that persons in jail and persons confined to state hospitals or treatment centers are not similarly situated and may be differently treated without violating the equal protection clause. Id. at 816. Disallowing credit for other than jail time was, in the court's opinion, "strictly a matter for state concern." Id. Going on to address the relevant state statute, the court dismissed the contention, also made by the appellee herein, that the statute should be given a broad reading. Declining to extend the "plain language" of section 921.161, the court held that the statute applies strictly to county jails and not to other kinds of pre-sentence confinement. Id. at 817.
The court below distinguished Pennington in its order, ostensibly on the basis that a sentence imposed upon a revocation of probation is not comparable for the purposes of jail-time credit to a sentence imposed upon an initial criminal conviction. As the supreme court noted in Pennington, however, the relevant statute, section 921.161(1), applies equally to both situations. See also Dailey v. State, 471 So.2d 1349, 1350 (Fla. 1st DCA 1985). Moreover, while some courts have considered the extent to which freedom of movement is curtailed in determining the applicability of the sentence credit statute, compare Nygren v. State, 658 P.2d 141 (Alaska App. 1983) with People v. Freeman, 95 Ill. App.3d 297, 50 Ill.Dec. 846, 420 N.E.2d 163 (1981), it appears that the supreme court's *1182 holding in Pennington was intended to apply to all treatment programs, regardless of the degree of confinement.
Thus, having concluded that Pennington controls, I must concur with the opinion of the majority. However, it should be noted that the law in other jurisdictions is by no means uniform in denying credit for time spent hospitalized awaiting an adjudication of competency. A small number of states have enacted statutes or rules explicitly requiring credit under these circumstances. See, e.g., Cal.Penal Code Sec. 2900.5 (West 1982); Minn. R.Crim.P. 20.01 subd. 9; N.J.R. 3:21-8. Other state courts have broadly interpreted statutes similar to section 921.161 to require credit for confinement in state hospitals. See Hart v. State, 588 S.W.2d 226 (Mo. App. 1979); State v. Mackley, 220 Kan. 518, 552 P.2d 628 (1976); State v. La Badie, 87 N.M. 391, 534 P.2d 483 (N.M.App. 1975); People v. Gravlin, 52 Mich. App. 467, 217 N.W.2d 404 (1974). At least one court has gone further, ruling that the statute must be interpreted broadly so as "to avoid an unconstitutional disparity in treatment between those confined in jail and in a state hospital prior to trial." People v. Cowsar, 40 Cal. App.3d 578, 582, 115 Cal. Rptr. 160, 161 (1974).
The Washington Supreme Court, in a series of decisions, has provided for mandatory sentence credit, for jail time as well as hospital confinement, as a matter of constitutional law. In Reanier v. Smith, 83 Wash.2d 342, 517 P.2d 949 (1974), the court held that detention of a defendant while he or she awaits trial or sentence must be credited against the statutory maximum and mandatory minimum sentences under the state sentencing scheme. In In re Phelan, 97 Wash.2d 590, 647 P.2d 1026 (1982), the rule was extended to require credit for time served in jail as a condition of probation. Then, in State v. Phelan, 100 Wash.2d 508, 671 P.2d 1212 (1983) (en banc), the court ruled that the equal protection and double jeopardy clauses require credit to be granted against discretionary prison terms as well as those fixed by statute.
At the time of these decisions, Washington did not have in effect a statute parallel to section 921.161 regulating sentence credit. The joint effect of Reanier, Phelan I and Phelan II was to provide, as a matter of constitutional law, that which Florida defendants receive under the statute: credit for all jail time served in connection with a conviction for which the defendant is eventually sentenced to prison. Phelan II, 671 P.2d at 1217. The relevance of these decisions to us is that the constitutional rule announced in them would appear to apply to hospitalization as well as incarceration. One of the consolidated appeals leading to Reanier involved a defendant who had spent time in a state mental hospital as well as a county jail, and the court did not treat this as a distinguishing factor.
The common thread running through these decisions is that no meaningful distinction can be made between incarceration before trial in a county jail, and state enforced confinement in a mental hospital in preparation for trial. In Pennington, our supreme court distinguished the two types of custody in terms of their respective purposes. However, the more pervasive view looks to the practical effect of the form of confinement:
Under the circumstances of this case, the confinement at the state mental hospitals was tantamount to being in jail. The physical place of confinement is not important as the appellant technically continued to be in jail while held in custody at the hospitals. He was not free on bail, had no control over his place of custody and was never free to leave the hospitals. For all practical intents and purposes, he was still in jail. The court takes judicial notice that the state mental hospitals have the facilities to enforce confinement of their patients, which brings them within the dictionary definition of a "jail."
Mackley, 552 P.2d at 629. I think the same considerations apply to the detention in this case. Tal-Mason was subject to inpatient hospitalization and his freedom of movement *1183 was severely restricted. He was at all times in the custody of the state pursuant to the prosecution of criminal charges against him. The sole purpose of his commitment was to render him competent to stand trial. It follows that Tal-Mason was similarly situated to persons in county jail awaiting trial, and should have been treated the same for the purposes of jail-time credit absent a rational basis for the classification made. Cowsar, 40 Cal. App.3d at 581, 115 Cal. Rptr. at 160.
There is yet another approach which merits discussion and which the supreme court in Pennington failed to address in its discussion of the appellant's constitutional claims. Section 917.014, Florida Statutes (1983) (formerly section 917.218) provides that time served in the treatment programs of the DHRS pursuant to a defendant's adjudication as a mentally disordered sex offender "shall be considered time served on the sentence imposed by the offender on the court." This section and its predecessor have repeatedly been held to require that a defendant be given credit toward his or her sentence for any time spent in a state hospital pursuant to commitment as a mentally disordered sex offender. Ault v. State, 415 So.2d 147 (Fla.2d DCA 1982); Abraham v. State, 382 So.2d 382 (Fla. 3d DCA 1980). Credit must be given not only for commitment after conviction, but for commitment during a period in which adjudication has been withheld. Ault, 415 So.2d at 147-48; Abraham, 382 So.2d at 383.
The interplay of section 917.014 with the supreme court's interpretation of section 921.161 creates two classes of criminal defendants: persons committed to state mental hospitals, prior to imposition of sentence, under the MDSO program, and persons committed to those same hospitals, prior to imposition of sentence, for some other kind of mental illness. The former receive credit toward their sentence, the latter do not. Once again, absent some reasonable legislative justification for this disparity in treatment, I would have to conclude that the failure to grant credit to a defendant adjudicated incompetent to stand trial violates the federal equal protection clause, as well as its Florida counterpart, Art. I, Sec. 2, Fla. Const. The Washington Supreme Court has recently cited a state statute parallel to section 917.014, providing credit for hospitalization for sexual psychotherapy, in support of its holding that time spent confined in a state mental hospital pursuant to a valid criminal conviction must be credited against a subsequently imposed jail sentence. Matter of Knapp, 102 Wash.2d 466, 687 P.2d 1145 (1984) (en banc). The court reasoned that to deny credit to offenders in need of mental health treatment, while granting credit to those in need of sexual psychotherapy, is a denial of equal protection. 687 P.2d at 1152. I would extend the rationale of Knapp to the classification before us, which differs only in the respect that here, the hospital commitment occurs prior to the adjudication of guilt.
Our justice system abhors the imposition of punishment prior to conviction. Hence the federal and state constitutional guarantees of the right to reasonable bail and the legal entitlement of a defendant to a presumption of innocence. As a practical matter pretrial detention is tolerated to assure the appearance of the defendant at his trial. By granting credit for time served we are doing the best we can to make up for punishing someone before conviction. Due process will tolerate no less. Finally, I note that our decision in this case expressly declares a state statute valid as against a constitutional challenge so that Tal-Mason may seek discretionary review in the Florida Supreme Court. Fla.R.App.P. 9.030(a)(2)(A)(i-ii).